Good morning, Your Honors. May it please the Court, Counsel. My name is Richard Walden. I am the attorney for the Appellant John Stone in this matter. Mr. Stone is a public lands rancher. And a public lands rancher is a rancher who utilizes permits to graze cattle on the lands managed by the Bureau of Land Management and or the United States Forest Service. Now as a public lands rancher, Mr. Stone is dependent upon his ability to graze on the public lands to maintain his ranch and also invest significant amounts of money and resources in doing so. Presently, Mr. Stone holds a permit to graze on the Deep Creek allotment in the San Bernardino National Forest on lands managed by the Bureau of Land Management. Up until October 4, 1999, he held a permit to graze cattle on lands in the Deep Creek allotment managed by the Forest Service that were right adjacent to the lands managed by the Bureau of Land Management. On October 4, 1999, the Forest Service canceled Mr. Stone's permit. It's Mr. Stone's contention that the permit was terminated in violation of Section 558C of the Administrative Procedures Act as interpreted by the Ninth Circuit in Anchusakee v. Department of Agriculture. The difference is that here you've got a finding of wilfulness and there you didn't. Well, in the district court case below, the district court indicated that the Forest Service didn't find or didn't say that they didn't have to make a finding of wilfulness. I don't believe anywhere in the record at the time they canceled the permit there was a finding of wilfulness on part of the Forest Service. But there was later. Well, there was seven months afterwards, there was a one-line statement made by the regional forester that he considered excess use to be willful. That occurred seven months after the actual termination of the permit occurred. So at the time, on October 1, Mr. Stone was no longer allowed the benefits of his license at that point. And seven months later, the Forest Service, looking back during the administrative review process, made a one-line indication that it was willful. That statement, besides being after the fact, and in our opinion, beyond when it should have occurred, is contradictory to the position the Forest Service took at the time of the Show Cause letter, which occurred July 12, and when the decision to terminate occurred October 4. And I think that's best exemplified in the response. But the Forest Service never said it wasn't willful. It just wasn't an issue they thought they had to address at the earlier time. Well, Section 558C requires, the Forest Service is charged with understanding the procedures that must follow under 558C, which is to give the licensee an opportunity, a notice of violations, an opportunity to come into compliance, unless it's willful. And at some point in time, and I would refer the Court to the case out of the International Trade Court, which isn't binding understanding on the Court, but is persuasive, it's the Pillsbury Company v. United States. In that case, the Court said, at some time around revocation, the defender or the licensee or the permittee has to be made aware that there's an indication of willfulness. There's going to be a finding of willfulness, or there's going to be an allegation of willfulness. Why? Well, 558C, the reason for that is to protect the license. But that doesn't apply in the case of willfulness. Yeah, but you have to know, you know, to fulfill the premise behind 558C, the licensee has to know a reason why his rights under 558C aren't being followed. I mean, if it's just, what we have here is the permit was just revoked. And then seven months later, we have a person who wasn't involved in the revocation proceeding pointing back and saying, oh, it's willful. And when the paperwork at the time, and I would refer the Court to the Forest Service's response to Mr. Stone's appeal, and it was a responsive document that was filed by the Forest Service in response to the appeal Mr. Stone filed, where Mr. Stone said, basically, the violations weren't willful, they weren't intentional. And the Forest Service said, in essence, and it's on pages 60 to 64 of the excerpt of record, and on page 61 specifically, they basically stated that that's irrelevant, that the permit can be terminated whether it's willful or not. And at that point in time, Mr. Stone said it's not willful, it's not intentional, and the Forest Service had the opportunity, and they believed it to be willful, to say, yes, yes it is. This is willful conduct. Okay, but at that time, they didn't think there was any reason that it made a difference. As the law developed, it did. What precludes them from saying, and going back and not changing the facts, but looking at the same facts and say, well, that was willful. Well, the legal law, the 55AC was there at the time. Oh, but our Court's decision wasn't there at the time. You have the requirement that you have to provide opportunity of notice unless it's willful. At the time, they had to know, and I would refer to another page of that same decision, and I think this might help clarify it, and hopefully it does. On the first page, on page 60 of the excerpt of record, the Forest Service claims that the show clause letter informed him of his most recent violations and gave him the opportunity to remedy the violations. So right there, there is what the Forest Service at that time believed to be, here's your notice of the violations and your opportunity to cure, right there. If they believed. Well, sure, that's the position they took before our Court. Right. And lost. That's true, and that's why they should lose this one. It's the same facts. Why? Because if they can go back and look at the facts and say, okay, now we know that we have to give prior notice unless it's willful, but the facts of this case support a conclusion that it was willful, so the statutory notice requirement doesn't apply. What's wrong with that? Well, that's the typical post hoc rationalization. That's going back. That's making a decision for one reason as an agency, and then when finding out that that's incorrect or having this Court of the Ninth Circuit determine that that process is incorrect, going back and go, well, it may be incorrect for this reason, but we'll find another reason to do it. I mean, the reason they terminated the permit was not because it was willful. Well, we send cases back to agencies all the time, and they respond to whatever the problem is, they make whatever findings are appropriate, and they make their decision and they're not precluded from making the same decision again. But this hasn't been sent back to the agency to have that done or any kind of opportunity for Mr. Stone to go up there and show and prove that it wasn't willful. I mean, all we have, and assuming that we even actually have a finding of willfulness, I mean, we have a one-line statement by the regional forester, so he considers excess use to be willful, and I'm not even sure what facts or which part of the violation he was talking about he would consider being willful. I mean, for example, the excess use that he was referring to was cattle that drifted on from BLM land to Forest Service lands that Mr. Stone had indicated was a result of having extra type of land on the BLM and waiting for the land on the Forest Service to open up, and the facts of that would indicate it clearly not willful. He didn't disregard his obligations to have them on there. They just drifted over and he wanted to return them. It wasn't a single episode. Yeah, but the record reflects there are, I mean, running cattle in areas like that is a very, I mean, it's not, it's a difficult operation. You've got cattle, you've got terrain up there that the cattle can go back and forth in, and you basically spend your time rounding them up, and I think the record would reflect that Mr. Stone did work with the Forest Service. In fact, during the process of his term permit, he had an increase of cattle run, and that's because according to the Forest Service, and it was the response to the appeal, they said it was because they had shown that improvements, they had shown the ability to work and cooperate. So it's a give and take, and it's been a give and take with Mr. Stone and the Forest Service in trying to respond, and I think the record actually reflects that. There were instances where he did cooperate with the Forest Service. But getting back, if the purpose of 558C is to give and protect the license, then at that time, before the license is revoked, and I think that I would again refer to Pillsbury v. United States as persuasive authority, and in that case, the court states, and I think it's a solid position to take, is that at some time close to the time of revocation, the agency must advise the plaintiff the basis for the willfulness claim. And there is a claim for willfulness, because what the agency is doing is it's denying the licensee his or her right as the license holder to have, you know, be given notice of the violations, alleged violations, and opportunity to respond. If you're taking that right away, you have to just, to be consistent with the statute, give them opportunity, and know this is why we're not giving the opportunity, this is why we're going to initiate agency action against you and revoke your license as an opportunity for you to come into compliance. In all of the cases cited by the government, even the finer foods case, which it relies upon that there's no requirement to make an explicit finding of willful, the determination regarding willfulness occurred at or prior to the time that the license was revoked. Here the license was revoked on October 4th, and in the response and the Forest Service explanation regarding, I mean, I think that's really key. The people, the officials or officers at the Forest Service who revoked the license when they were asked to explain their decision specifically said it wasn't because it was willful, it said it was, we could do it, it doesn't matter if it's willful, because Mr. Stone made the comment, this was not willful, and they said that's irrelevant, it's not. They also stated that you have your opportunity and notice to comply. If they believed that it was willful, having charged with understanding the APA and knowing knowledge of the APA, they didn't have to make the comment, they didn't have to provide notice and opportunity, but they believed that they were providing notice and opportunity in the show cause letter, and the Ninth Circuit has held that the show cause letter isn't sufficient because it's doing two things at one time. And that's why, you know, I hope I've answered the questions somewhat for you. The other issue in this, besides the willfulness, is we get back to the notice. The Forest Service claims that they gave ample notice under Anchusakee because they claim that there is a distinction between an Anchusakee case and this case at hand. In Anchusakee, they basically gave a show cause letter, but also given an annual operating permit that outlined previous violations of the previous grazing season, so they shouldn't happen, shouldn't occur again. The exact same situation has occurred in this case. The only thing that was different, there was a November 12th or November 16th, 1998 letter that recapped the grazing season and said that we had some problems, these things need to be clarified. But that letter in and of itself did not tell Mr. Stone or inform Mr. Stone that if these aren't corrected, we're going to terminate your permit. The first time that occurred was on the July 12th, 1999 show cause letter. I have about eight minutes to go. I'd like to reserve those for rebuttal. Ms. Thurston. Good morning, Your Honors, and may it please the Court. I'm Alice Thurston on behalf of the Forest Service. I do believe that the one issue here that needs to be separated out from the notice issue is the question of willfulness. I think that Mr. Stone's argument on appeal conflates the two. He actually appears to be asking for notice of a finding of willfulness. I think that willfulness is apparent throughout this case, and I'd like to merely walk the Court through a few citations to the record to show where the agency found willfulness and the times at which it did. First off, I'll start with an acknowledgment, my Mr. Stone, that, in fact, in 1998 he brought more cattle onto his allotment than he had been authorized to. Are you, just to clarify, so I understand what you're saying, are you now going to walk us through where the record supports willfulness, or are you walking us through where there was a finding of willfulness? I was going to do one written acknowledgment by Mr. Stone of where he says he intentionally brought more cattle on, and then I was going to go through the agency's findings and point out the willfulness as the agency saw it. On page 217 of the supplemental excerpts of record and page 24 of the excerpts of record, that's where Mr. Stone acknowledges in writing that he brought on more cattle than he was authorized to do in 1998. If you look on page, the show cause letter page, which begins on excerpts of record page 41, the show cause letter recites the violations and the notices that were given to Mr. Stone. And then on page 42, the evidence, the show cause letter says, from the evidence before me it appears you have ignored our instructions and the terms and conditions of the permit. Ignoring something is a volitional act. It's intentional. It clearly meets the definition set forth in the potato case of intentional, reckless disregard or intentional behavior. The cancellation letter, which revoked the permit, again, it's on page 48 through 51, it recites the facts in detail and it finds willfulness. You repeatedly, and I'm quoting here, you repeatedly fail to adhere to the instructions of the district ranger and your annual operating instructions. You appear to be ignoring or making only a half-hearted effort to follow our instructions and adhere to the terms and conditions of the grazing permit. Mr. Stone appealed the cancellation of his permit. It was reviewed by the deputy regional forester at excerpts of record 71. The deputy regional forester finds that excess use of the allotment is considered a willful act. Now, that was in May of 2000. The Nschustige decision of this Court did not issue until July of 2001. At that point, Mr. Stone requested review a second time by the agency of his permit revocation. And the agency, at supplemental excerpts of record 268 through 269, granted him another review in August of 2002 and found that because many, if not all, of Mr. Stone's permit violations appear to have been willful, Section 558C does not apply. That's the last finding of willfulness by the agency. All of the prior three predate this Court's decision in Nschustige. That one alone postdates it. And the district court affirmed that willfulness was the record was rife with willfulness. Mr. Walden relies on a CIT case, and he's citing at page 773, 22 CIT 773, saying that at some time close to the time of revocation, a plaintiff must be advised of willfulness. We think that that happened here, but let me read you the full sentence Mr. Walden is citing. Quote, unless the charge of willfulness cannot be reasonably disputed, the statutory scheme requires notification. 558C does not itself mention that a plaintiff must be given notice of a finding of willfulness, and the Finer Foods case out of the D.C. Circuit expressly says that there need not be a notification of willfulness or even a finding of willfulness on the part of the agency prior to the commencement of action against a permittee or a licensee in that case. In other words, both the premise that there has to have been some notification of willfulness is wrong, and in any event, there was notification of willfulness at every step of the agency action, and the record here is rife with Mr. Stone's careless disregard in terms of complying with his permit and the agency's instructions. Finally, I note that in the Enchustigee decision, there was no willfulness. And the Court said not only that the agency did not find willfulness, but that the record did not support the finding of willfulness, and the Court says it in the conjunctive. It says the agency did not make a finding and the record does not support a finding of willfulness. In other words, the Court was apparently satisfying itself that neither of two independent bases for finding willfulness was present. And in this case, both of those bases independently and correctively support a finding of willfulness, such that Section 558C does not hear the notice and opportunity to comply requirements of 558C do not hear comply. Apply. Excuse me. Moving on to notice and opportunity to comply, I'm not going to take my 20 minutes unless the Court has any specific questions, but I would like to just address this briefly, if I may. I do think that the amount of notice here in this case seems much greater than in the Enchustigee case. Mr. Walden has said that there was a sum-up letter in the Enchustigee case, but I see no reference to that in the Ninth Circuit's decision. I only see a reference to the annual operating plan, which in this case would have been the same as the annual operating instructions that Mr. Stone signed in his own case. There's nothing comparable, for example, to the November 16, 1998 letter, which specifically notified Mr. Stone, and this is at excerpts of Record 39, of his past violations and said, in the future, any additional cattle that are to be tagged must be pre-approved. After giving him notice of the violation that had happened in 1998, the November 1998 letter said, you must in the future behave differently. Again, on page 39 of the excerpts of Record, the November 1998 letter says, it was agreed that you were permitted 88 head for the season, and you brought on 102 head. These types of changes must be pre-approved, again, giving him notice of the violation and giving him opportunity to cure. Rule 558C, 5 U.S.C. 558C, requires no more. It is designed to give notice of the violation and an opportunity to come into compliance. Given the history of Mr. Stone's repeated failure to take measures when instructed to communicate with the Forest Service to keep the cattle out of the riparian areas, this is not a case where it was simply a one-time notification. There's been a history of Mr. Stone acknowledges receiving 10 written notifications, at least, in the past. And finally, I'd like to point out that, you know, we do have an endangered species at issue here. This isn't an empty exercise on the part of the Forest Service in terms of protecting the nation's resources. At this point, the scene in the allotment has changed. There have been fires. There has been drought. More species have been identified in the neighborhood. And it's not as if this is a punitive action against Mr. Stone for no purpose whatsoever. But the agency, I think the record shows Mr. Walden said this correctly. The agency did work very hard to try to bring Mr. Stone into compliance. I think that it bent over backwards. And the recitation of facts in my brief shows a considerable amount of efforts to reach out to Mr. Stone to try to help him come into compliance. If there are no further questions? I don't think so. Thank you very much, Your Honor. Thank you, Mr. Walden. Thank you. Just to be brief here and go over a couple points made by the Forest Service. First, discussing the finer foods case, which the Forest Service indicates is authority for not a requirement to make a finding of willfulness. That's not what the finer foods case says. What it says was it wasn't required to make a formal finding after a hearing before the action is initiated. In that case, they basically initiated an action. They made a finding, a formal finding of willfulness before they revoked the license in question. What they didn't do was make a formal finding of willfulness before they initiated the action. And then that's what that stands for. It doesn't give the agency the ability just to go through the process and disregard the requirements under 558C. And then after the fact, oh, by the way, it's willful. A couple things, you know, the show cause letter says, you know, you seem to be ignoring, you know, I mean, I would argue that it's not, that's not an allegation of willfulness or an indication of willfulness. But it still is contradicted by, and I'll still go back to the Forest Service's response to, you know, because the assertion was made by Mr. Stone in his appeal. I didn't do this willfully. I didn't do this intentionally. And the Forest Service says, that doesn't matter. If it was truly willful, and they believed it to be willful, that was the time to say it. That was the time to put it forward and say, no, these are willful, these are willful acts. These are intentional and willful acts, and therefore we're going to go through and terminate your permit. They didn't do that. The reason they didn't do that is because they believed that they were following 558C through the show cause letter. They believed that's what it was. Just like they were in Anchustigee, they believed that was a process the Forest Service had. Was that we're going to follow this, we're going to give you a show cause letter, give you 30 days to show cause why we shouldn't terminate your license, and if you can't come up with it, we're going to terminate your license. The Ninth Circuit held that that wasn't sufficient. And so the Forest Service in this case believed that to be, they believed they were following, if they didn't, if they thought it was willful that time, there'd be no reason for them in their response to say, we're following the law, we're following the requirements of 558C. The recap letter that, I'm sorry, I'm shifting gears over to the next one. The recap letter, the November 16th, 1998 letter, it describes the different issues that rose up, but it doesn't anywhere in this letter say, in Anchustigee we're going to cancel your permit, we're going to terminate your permit. It doesn't say, these are the violations, and this is the action that's going to occur if you do this. This is the same type of recap that occurred in Anchustigee, and the court, and there's an annual operating permit, and you got a recap, and the court specifically said there was a recap of the previous grazing season listing all the different issues that had been confronted, all the violations, said we can't have these. The Ninth Circuit in that case said that wasn't sufficient notice. I would submit there's fundamentally no difference between the two letters. Finally, the ESA question, I think at the end of their brief, they said then there's some Endangered Species Act issues out there. I believe those issues of Mr. Stone's permits reinstated, those are issues that he would have an opportunity to participate in any kind of consultation or any kind of things going on out at the allotment with the Forest Service, but at this point he can't because it's been improperly terminated. I don't think that should have any issues regarding Endangered Species Act and consultation and stuff. It should have a bearing on whether the permit is reinstated because if the permit is reinstated, and those are issues out there in the allotment, those are issues that the permittee under the Endangered Species Act and the Forest Service Regulation would have an opportunity to participate in whatever modifications of grazing need to be done out on the allotment. Unless there are any more questions. Thank you very much. Thank you very much. We appreciate your input on the case. Thank you.
judges: Gibson, Rymer, Clifton